UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BRUCE L. JOHNSON<br><br>　　　　　　　　　Plaintiff,<br><br>vs.<br><br>STUPID PRICES, INC.,<br><br>　　　　　　　　　Defendant. | Case No. C07-1817 MJP<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION TO CONTINUE |

This matter comes before the Court on Defendant's motion for summary judgment. (Dkt. No. 18.) The Court has considered Defendants' motion, Plaintiff's letter (Dkt. No. 23), Defendants' reply (Dkt. No. 21), and other pertinent documents in the record. Even though Plaintiff filed an untimely response to the motion (see Dkt. No. 24), the Court considered it and it does not alter the Court's ruling on the matter. For the reasons stated below, the Court GRANTS Defendant's motion.

**Background**

On August 11, 2006, Plaintiff, an African-American, began working for Defendant Stupid Prices, Inc. ("SPI") at its Kent, Washington location. SPI, a Washington corporation, operates a chain of liquidation outlets selling merchandise acquired from, among other sources, other retailers' overstock. (Baisch Decl. at ¶ 4.) Phil Germer, the manager at the SPI store in Kent, hired Plaintiff as a warehouse helper. (Id. at ¶ 6.) Mr. Johnson worked for SPI between August 11, 2006 and August 23, 2006. (Id.)

ORDER - 1

During his time at SPI, Plaintiff heard his immediate supervisor, John Murphy, made a derogatory statement. (Johnson Decl. at ¶¶ 5, 8-9.) Plaintiff asserts Mr. Murphy said "how do you like the new monkey we got working here." (Johnson Decl. at ¶ 9.) Defendant claims its investigation revealed Murphy had no intent to make a slur and that he was teasing a female Caucasian worker about the way she was walking. (Baisch Decl. at ¶ 8.) Nevertheless, on August, 19, 2006, SPI reprimanded Murphy with an "Employee Warning Notice" for the "possible racial slur." (Baisch Decl., Ex. 2.) The warning states that Murphy was supposed to apologize to Mr. Johnson for the incident. (Id.) Johnson states that Murphy never apologized. (Johnson Decl. at ¶ 18.) Mr. Johnson missed work for at least a day as a result of the incident and claims that when he spoke to Germer about the incident, he was told to "get over it." (Johnson Decl. at ¶ 16.)

Plaintiff states he reported the incident to several store managers who failed to "effectively remedy" the situation. (Id. at ¶¶ 11-13.) He further states the he suffered from increased blood pressure as a result of this incident and that he had to seek medical attention. (Id. at ¶ 14.) When Plaintiff returned to work, he claims Murphy made monkey sounds and gestures in the area where Plaintiff worked. (Id. at ¶¶ 19-20.) Plaintiff claims he reported this incident to Germer who ignored his complaints. (Dkt. No. 23.) Defendant states that there have been no other complaints of harassment or discrimination from SPI employees. (Baisch Decl. at ¶ 14.)

In SPI's view, Johnson was unable to perform his job duties because of his high blood pressure and his employment was terminated by mutual agreement. (Baisch Decl. at ¶ 12.) Johnson did not return to work after the second Murphy incident because he felt Murphy created a hostile work environment. (Dkt. No. 23.) He claims Germer terminated him for this failure to return to work. (Id.)

In April 2007, Plaintiff filed a complaint against SPI with the Equal Employment Opportunity Commission ("EEOC") and on August 9, 2007, the EEOC dismissed his charge.

ORDER - 2

(Pugh Decl., Ex. 1.)  After filing for leave to proceed in forma pauperis, Plaintiff filed his complaint in November, 2007.  (Dkt. No. 4.)  Plaintiff, proceeding pro se, asserts claims for: (1) harassment in violation of federal law, (2) harassment in violation of state law, (3) retaliation in violation of federal law, (4) retaliation in violation of state law, and (5) unlawful and wrongful discharge.  (Dkt. No. 4 at 4-5.)  Defendant requests the Court grant summary judgment on all of Plaintiff's claims.

**Discussion**

I.  Summary Judgment Standard

Summary judgment is not warranted if a material issue of fact exists for trial.  Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995), cert. denied, 516 U.S. 1171 (1996).  The underlying facts are viewed in the light most favorable to the party opposing the motion.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  "Summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The party moving for summary judgment has the burden to show initially the absence of a genuine issue concerning any material fact.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970).  However, once the moving party has met its initial burden, the burden shifts to the nonmoving party to establish the existence of an issue of fact regarding an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  To discharge this burden, the nonmoving party cannot rely on its pleadings, but instead must have evidence showing that there is a genuine issue for trial.  Id. at 324.

II.  Harassment

Plaintiff asserts that SPI violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e)(a)(1) and 42 U.S.C. § 1981, by creating a racially hostile work environment.  (Dkt. No. 4 at 4.)  Plaintiff also argues SPI's actions violated Washington's Law Against Discrimination,

ORDER - 3

RCW 49.60.180. Because Washington law tracks federal law on this issue, the court will analyze both harassment claims simultaneously. See Hardage v. CBS Broadcasting, Inc., 427 F.3d 1177, 1183 (9th Cir. 2005)(citing Anderson v. Pac. Mar. Ass'n, 336 F.3d 924, 925 n. 1 (9th Cir. 2003)).

To prevail on his claim of disparate treatment based on race, a plaintiff must offer direct or circumstantial proof that his employer's challenged decision was motivated by intentional discrimination. Washington v. Garrett, 10 F.3d 1421, 1432 (9th Cir. 1993); see also Cannon v. New United Motors Mfg., Inc., 141 F.3d 1174 at *3 (9th Cir. 1998). Direct evidence is evidence which "proves the fact [of discriminatory animus] without inference or presumption." Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1221 (9th Cir. 1998)(quoting Davis v. Chevron, U.S.A., Inc., 13 F.3d 1082, 1085 (5th Cir. 1994)). Unlike the statements at issue in Godwin, the statements and actions Johnson describes are not directly related to any adverse action by his employer (e.g. his termination). 150 F.3d. at 1221 (employer's comment was related to position plaintiff sought). Thus, Johnson has not presented any direct evidence of racial discrimination.

In the absence of direct evidence that he was the victim of racial discrimination, Plaintiff's case must pass through the McDonnell Douglas burden shifting analysis. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-805 (1973); see also Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061-62 (9th Cir. 2002). First, Plaintiff bears the burden of establishing a prima facie case of employment discrimination based on race. Garrett, 10 F.3d at 1432. Second, Defendant then bears the burden of articulating a legitimate non-discriminatory reason for the adverse employment decision. Id. Finally, the burden shifts back to Plaintiff to show that Defendant's stated reason was merely a pretext. Id. (citations omitted).

To establish a prima facie case, Plaintiff must show (1) he was subject to verbal or physical conduct of racial or sexual nature, (2) that conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of his employment. Gregory v. Widnall, 153 F.3d 1071, 1074 (9th Cir 1998). Moreover, the conduct must be imputed to the

employer. See Washington v. Boeing Co., 105 Wn. App. 1, 13 (Wn. Ct. App. 2000).  Viewing the evidence presented in a light most favorable to Plaintiff, Johnson has described conduct that is of racial nature. (Johnson Decl. at ¶ 9.) Similarly, Johnson's complaint to his superiors at SPI makes it clear the comment was unwelcome. (Id. at ¶¶ 11-13.)

The question then turns to whether Plaintiff has described conduct that is sufficient or pervasive enough to alter the conditions of his employment. Gregory, 153 F.3d at 1074. The working environment must be both objectively and subjectively perceived as abusive. Brooks v. City of San Mateo, 229 F.3d 917, 923-24 (9th Cir. 2000)(quotations omitted).  Isolated, single incidents of harassment are generally insufficient to support a finding of objective unreasonableness. Id. at 924. In Harris, the Supreme Court listed frequency, severity, and level of interference with work performance as factors relevant to a court's inquiry on this issue. Harris v. Forklift Systems, Inc., 510 U.S. 17, 23 (1993). Here, Johnson points to two events: Murphy's original comment Johnson "overheard" and Murphy's gestures. Johnson's extremely short stay with SPI makes it somewhat difficult to assess whether his working conditions were altered.  His timecard indicated he was worked at SPI on seven days over the course of two weeks. (Baisch Decl., Ex. 1.)  The Court finds that the two events are more like the isolated incident described in Brooks than more frequent transgressions contemplated by Harris. Plaintiff states he has physically disturbed by the event, but offers nothing beyond his own declaration to demonstrate distress. (See Johnson Decl.)  As such, the Court cannot conclude, based on the record before it, that Plaintiff has described conduct sufficient or pervasive enough to alter the conditions of his employment.

Plaintiff has failed to present a prima facie case for a racially hostile work environment in violation of either federal or state law. Defendant is entitled to summary judgment on both claims.

III. Retaliation

A plaintiff's claim for retaliation in violation of Title VII is analyzed under the McDonnell Douglas framework outlined above. Jurado v. Eleven-Fifty Corp., 813 F.3d 1406, 1411 (9th Cir. 1987). To establish his prima facie case, Plaintiff must show (1) he engaged in statutorily protected activity, (2) SPI imposed an adverse employment action, and (3) there was a causal link between the protected activity and adverse action. Id. Because the test for retaliation is identical under RCW 49.60.210 (1), the Court will analyze the federal claim and state claim simultaneously. See Coville v. Cobarc Services, Inc. 73 Wn. App. 433, 439 (Wn. Ct. App. 1994) ( listing the test as: "(1) he or she engaged in statutorily protected activity; (2) an adverse employment action was taken; and (3) a causal link between the former and the latter"). The parties do not dispute that Johnson's complaint of discrimination was a protected activity. (Dkt. No. 18 at 11.)

An employment decision is adverse if it is based on a retaliatory motive and is likely to deter protected activity. Ray v. Henderson, 217 F.3d 1234, 1242-43 (9th Cir. 2000)(adopting the EEOC's interpretation of "adverse employment action); see also Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 ("a plaintiff must show that a reasonable employee would have found the challenged action materially adverse") . Viewing the evidence in the light most favorable to Plaintiff, Johnson's termination was a decision squarely within this definition of "adverse." A causal link between protected activity and adverse action may be inferred where the two events are close in time. Ray, 217 F.3d at 1244. As a matter of logic, this inference may carry less force when the total length of Johnson's employment was less than two weeks and when his timecard indicates he only worked seven days during that period. (See Baisch Decl., Ex.1.) Nevertheless, the proximity is close enough in time to infer a causal link between his complaint and his termination. Under the minimal evidence standard required under this initial burden phase, Plaintiff has stated a prima facie case. See, e.g., Coghlan v. American Seafoods Co. LLC., 413 F.3d 1090, 1094 (9th Cir. 2005)

Pursuant to <u>McDonnell Douglas</u>, the burden shifts to SPI to articulate a non-discriminatory reason for its action. 411 U.S. at 802-805. Here, SPI states they had a legitimate reason to his termination: he was no longer able to perform his job functions because of his high blood pressure and there were no other job openings. (Dkt. No. 18 at 11-12.) Johnson's case is bereft of any evidence that would show this justification to be a mere pretext. His own declaration, filed after Defendant's motion and reply, is silent on the cause of his termination. While he argues in his pleadings that his blood pressure did not interfere with his work, a party may not simply rely on pleadings to create a material issue of fact. <u>Celotex Corp.</u>, 477 U.S. at 324. There is simply no evidence, either direct or circumstantial, in the record that would show SPI's justification to be mere pretext. <u>Coghlan</u>, 413 F.3d at 1095 (noting that direct evidence need only be minimal to establish pretext but further observing that circumstantial evidence must be specific and substantial to defeat summary judgment). Plaintiff thus fails to carry his burden under <u>McDonnell Douglas</u>.

Moreover, the fact that the same decision-maker hired and fired Johnson creates a strong inference that SPI was not racially motivated. <u>Coughlan</u>, 413 F.3d. at 1096-97. The inference arises where the same individual is responsible for hiring and firing a plaintiff and both actions take place in a short time frame. <u>Id.</u> at 1096. Here, Germer was responsible for hiring Johnson and had the conversation with Johnson that terminated his employment. (Baisch Decl. ¶¶ 6, 12.) Both conversations took place just weeks apart. (<u>Id.</u>) While the inference is neither a "mandatory presumption" nor a "mere possible conclusion," a district court must consider the same actor analysis when evaluating a motion for summary judgment. <u>Coughlan</u>, 413 F.3d at 1097. Plaintiff has offered no evidence to counter this inference.

Thus, because Plaintiff cannot carry his burden under <u>McDonnell Douglas</u> or rebut the same actor inference, Defendant is entitled to summary judgment on the retaliation claims.

IV. Wrongful Discharge

1    Plaintiff asserts a claim for "unlawful and wrongful discharge" in violation of the
2    common law of Washington. (Dkt. No. 4 at 5.) Defendant apparently interprets this action as a
3    claim for constructive discharge. (See Dkt. No. 18 at 12-13.) Johnson's pleadings offer no
4    clarification on this issue. (Dkt. No. 23.) The Court reads Plaintiff's complaint as asserting a
5    claim for wrongful discharge in violation of public policy. In Washington, an employer may be
6    liable for the tort of wrongful discharge "where employees are fired for exercising a legal right or
7    privilege." See Reninger v. State Dept. of Corrections, 134 Wn.2d 437, 447 (Wn. 1998). Again,
8    Plaintiff has offered no evidence beyond his own pleadings explaining the reasons for his
9    termination. He merely states that "Defendant has hidden the true reasons for Plaintiff's
10   termination." (Dkt. No. 4 at 5.) Plaintiff has failed to produce any evidence that would create a
11   material issue of fact on the cause of his discharge. Adickes, 398 U.S. at 159. In the absence of
12   any such evidence, Defendant is entitled to summary judgment on Plaintiff's wrongful discharge
13   in violation of public policy claim.

V. Motion to Continue

15   On September 24, 2008, five days after Defendants' motion for summary judgment came
16   ripe for consideration, Plaintiff filed a motion for a continuance. (Dkt. No. 26.) By that date,
17   Plaintiff had already filed a response (Dkt. No. 21) as well as a sur-reply (Dkt. No. 24) to
18   Defendant's motion for summary judgment. In his motion for a continuance, Plaintiff asks the
19   Court to delay the trial date so he can retain an attorney. (Dkt. No. 26.) His motion came ripe
20   just a month and a half before his scheduled trial date and more than two years after his departure
21   from SPI. Since he filed his complaint in November, 2007, Plaintiff has failed to serve
22   Defendant with any discovery request or any request for a deposition. (Pugh Decl. ¶ 12; Dkt.
23   No. 28 at 3.) The Court's scheduling order, dated January 31, 2008, states specifically that
24   failure to complete discovery is "not recognized as good cause" for the purposes of altering the
25   dates. (Dkt. No. 17 at 1.) The Court is sympathetic to Johnson's attempts to retain an attorney.
     However, attorneys in such matters can be retained without any up-front costs to plaintiffs on a

contingent free basis. Plaintiff has not explained whether he has attempted to contact any attorney nor has he stated if any attorneys have turned down his requests for representation in the two years since he stopped working for SPI. On this record, the Court cannot find good cause to continue the matter.

**Conclusion**

The Court agrees with Johnson that Murphy's conduct, if it occurred as Plaintiff described, is undoubtedly offensive. However, the standards for evaluating hostility under Title VII and other relevant statutes are demanding. See Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998). Plaintiff's failure to provide the Court with any evidence beyond his own declaration is detrimental to his claims. The Court hereby GRANTS Defendant's motion for summary judgment on all claims. (Dkt. No. 18.) The Court DENIES Plaintiff's motion for a continuance. (Dkt. No. 26.) Plaintiff's action is dismissed with prejudice.

The clerk is directed to send a copy of this order to counsel of record and to Plaintiff.

DATED this 6th day of November, 2008.

s/Marsha J. Pechman
HONORABLE MARSHA J. PECHMAN
United States District Court Judge